*1065 OPINION.
Matthnws:
The petitioner has been a closely held corporation since the date of its incorporation, all of its capital stock (except six qualifying shares) having been issued to the four Jones brothers, who were engaged in the oil business in the State of Oklahoma, in the amounts set out in our findings. Upon its organization these brothers conveyed to the petitioner certain leases, mining rights, and royalty interests and paid in cash to the petitioner the sum of $100,000, in exchange for all the capital stock, the properties being transferred subject to the condition that the petitioner would indemnify and save harmless each and all of the contributing stock *1066 holders against loss or damage arising out of litigation in connection with these properties which had belonged to them. Such an agreement was entered into by the parties for the reason that the stockholders anticipated that attacks were likely to be made on the titles to some of the properties transferred, and that suits might be instituted asking for an accounting for all income and profits derived from the properties during the period of claim of ownership under color of title. In other words, the properties were conveyed to the petitioner subject to any claims which might arise on account of questionable titles and it was understood and agreed that the petitioner would reimburse the transferors for any amounts required to be paid by them on account of their prior ownership of the properties.
It is to be noted that petitioner did not make any payment in money for these properties and that its capital stock was not distributed in proportion to the contributions in cash and property made to it by the stockholders. The entire cash contribution of $100,000 was paid in by B. B. Jones and M. Jones in equal amounts of $50,000. An examination of the schedules listing the properties discloses that these two individuals respectively owned approximately three fourths and one fourth of the transferred properties, E. L. Jones and B,. L. Jones together owning only about 1 percent thereof. Entries were made on the petitioner’s books to show a paid-in surplus in an amount equal to the estimated value of the properties, which was in excess of $7,000,000.
When the petitioner accepted the proposition of the transferors to convey to it these oil properties, subject to the condition that they would be reimbursed by the petitioner for any payments they might have to make as a result of their prior ownership or claim of ownership of the properties, we are of the opinion that a valid agreement was entered into under which the petitioner was legally bound to reimburse B. B. Jones for the sums paid out by him in settlement of the litigation instituted by George Tucker, under the circumstances described above. It does not follow, however, that such payment constitutes an allowable deduction from income of the petitioner for the year in which the payment was made. On the contrary this transaction would seem to come clearly within the well settled principle that the cost of property or the cost of defending or perfecting title to property is not a deductible expense. Ordinarily such outlays, whether in the form of legal fees or compromise payments, are capital expenditures and should be added to the cost of the property. Murphy Oil Co., 15 B. T. A. 1195, affirmed on this issue, 55 Fed. (2d) 17; Blackwell Oil & Gas Co., 20 B. T. A. 661; affd., 60 Fed. (2d) 257; *1067 Sunburst Oil & Refining Co., 23 B. T. A. 829; and cases cited therein. Certainly the amount paid by the petitioner in the instant case to reimburse B. B. Jones for the sums paid by him, as hereinabove set out, is not an ordinary and necessary expense incurred in carrying on the petitioner’s business, nor does it constitute a loss of the corporation which may be deducted under the provisions of the revenue laws. The respondent did not err in disallowing the deduction claimed on account of this item. See, in this connection, Commissioner v. Field, 42 Fed. (2d) 820, where the Circuit Court of Appeals for the Second Circuit held that attorney fees paid out by the taxpayer in a suit involving the taxpayer’s right to his deceased brother’s estate, under the terms of his grandfather’s will, should not be treated as capital expenditures or business expenses, saying: “expenses of this sort must fall within those general costs of protecting one’s property for which the statute makes no allowance.”
Counsel for the petitioner have argued that no question would have been raised with respect to allowing the deduction claimed herein if the validity of the agreement of indemnity had not been challenged by the respondent. It is pointed out by the petitioner that the deduction was disallowed on the ground that the judgment obtained against the stockholder was not an obligation of the petitioner corporation. Witnesses for the petitioner testified that the sum of $145,000 was paid by B. B. Jones out of his own funds on deposit in the State of Oklahoma in order that a prompt and advantageous settlement of the plaintiff’s claims might be effected, and the petitioner subsequently credited the account of B. B. Jones on its books in the amount of $145,017.85. We consider this point entirely immaterial and our conclusion would be the same if the corporation had originally made the payment in question direct to the plaintiff, George Tucker.
We do not know the nature of the litigation involving other properties of the petitioner but we do know that entries were made on the books to show payments aggregating $437.58 as expenses on account of three other lawsuits. Nothing is contained in the record to indicate that the petitioner is entitled to a deduction on account of these expenses.
The respondent’s determination is sustained.
Reviewed by the Board.

Judgment will be entered for the respondent.